UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAN GIURCA,

    Plaintiff,

-against-

MONTEFIORE HEALTH SYSTEM, INC., et al.,

    Defendants.

18-CV-11505 (ER) (BCM)

**ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/1/21

**BARBARA MOSES, United States Magistrate Judge.**

This case has been closed since August 25, 2020, when the parties filed a stipulation of dismissal with prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). Ten months and 25 docket entries later, defendants seek an order sealing plaintiff's first motion to vacate the dismissal – which plaintiff filed eight weeks ago and voluntarily withdrew two weeks ago – and plaintiff seeks leave to file a second motion to vacate the dismissal. For the reasons that follow, both applications will be denied.

## Background

On December 10, 2018, Dan Giurca, M.D., sued his former employer Montefiore Health Systems, Inc. (Montefiore), together with three individual Montefiore physicians in senior positions, alleging that defendants forced him to resign in January 2017, and thereafter "blacklisted" him, which adversely affected his employment opportunities elsewhere, in retaliation for his "bringing to light and attempting to correct" various instances of "patient neglect," "defrauding the Medicaid and Medicare Programs," and "malpractice" at Montefiore. Am. Compl. (Dkt. No. 35) ¶¶ 1, 69-75.

In July and August 2020, the parties litigated a series of discovery disputes. On August 12, 2020, the Court ruled that defendants were entitled to an award of their reasonable attorneys' fees incurred in connection with those disputes pursuant to Fed. R. Civ. P. 37(a)(5), and directed

defendants to file their fee application by August 25, 2020. (Dkt. Nos. 95, 99.) No fee application was filed. Instead, on August 25, 2020, the parties filed a Stipulation of Dismissal with Prejudice pursuant to Rule 41(a)(1)(A)(ii), dismissing "all claims or causes of action that were or could have been asserted therein by either party." (Dkt. No. 100.) Both Dr. Giurca and his counsel signed the stipulation.

On March 5, 2021, acting through new counsel, plaintiff sought leave to move pursuant to Fed. R. Civ. P. 60(b)(3) to vacate his voluntary dismissal. (Dkt. No. 103.) Rule 60(b)(3) permits the Court, in its discretion, to relieve a party from a final judgment on grounds of "fraud," "misrepresentation," or "misconduct by an opposing party." After a pre-motion conference (Dkt. No. 110), plaintiff filed his motion papers on May 3, 2021 (Dkt. Nos. 116, 119), arguing principally that defendants' counsel committed discovery misconduct prior to the voluntary dismissal (including, for example, making "speaking objections and excessive interruptions" during depositions, violating a court-ordered deadline for document production, making only a "partial production" of certain requested records, and "dumping" other discoverable documents "just a few days before the end of discovery"), and that the individual defendants perjured themselves during their depositions, all of which "prevented [plaintiff] from fully and fairly presenting his case." Pl. Rule 60(b)(3) Mem. (Dkt. No. 119-2) at 6, 9, 12 13, 14. The motion was supported by a declaration signed by Dr. Giurca (Giurca Decl.) (Dkt. No. 119-1) and 72 exhibits, totaling more than 1000 pages. Plaintiff made no claim that the alleged misconduct underlying his Rule 60(b)(3) motion was hidden from him during the pendency of the case. Rather, he faulted his prior counsel for "fail[ing] to inform the judge" about it, Pl. Rule 60(b)(3) Mem. at 12, and failing "to fully inform Plaintiff of discovery rules." Giurca Decl. ¶ 19.

On May 24, 2021, defendants served on plaintiff, but did not file, a sanctions motion pursuant to Fed. R. Civ. P. 11. (Dkt. No. 121.) On June 11, 2021 – three days prior to the

expiration of the 21-day "safe harbor" provided by Rule 11(c)(2) – plaintiff asked to withdraw his Rule 60(b)(3) motion. (Dkt. No. 122.) The Court granted his request. (Dkt. No. 123.)

On June 25, 2021, defendants filed a letter-motion (Def. Ltr.) (Dkt. No. 124) requesting that plaintiff's Rule 60(b)(3) motion papers be sealed because they contain "highly inflammatory rhetoric" that could have an "image-tarnishing impact." Def. Ltr. at 1. Defendants argue that since plaintiff's motion was withdrawn, the papers are no longer "relevant to the judicial function," *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995), and therefore are not "judicial documents" subject to the presumptive right of public access described in *Amodeo* and *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006). Def. Ltr. at 2.

On June 28, 2021, plaintiff filed a letter-motion (Pl. Ltr.) (Dkt. No. 125) opposing the sealing request and seeking leave to file a second motion to vacate his voluntary dismissal, this time pursuant to Fed. R. Civ. P. 60(b)(2), which permits the Court, in its discretion, to relieve a party from a final judgment based on "newly-discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." The newly-discovered evidence consists of emails produced on June 15, 2021 in a state court lawsuit that plaintiff is pursuing against the Orange Regional Medical Center (ORMC), which hired him – and then fired him – after he left Montefiore.[1] Plaintiff explains that these emails (which all appear to be internal to ORMC) could be used to support his now-dismissed retaliation claim

---

[1] In this action, plaintiff alleges that ORMC fired him in October 2018 after his ORMC supervisor saw his name and photograph on the Montefiore "blacklist," identified as a "security risk," and thus that the Montefiore blacklist is what "cost him his employment at ORMC." Am. Compl. ¶ 75. In the state court lawsuit, plaintiff alleges that ORMC fired him in October 2018, and barred him from the hospital, in retaliation for his "bringing to light and attempting to correct" various instances of "patient harm and abuse," defrauding Medicaid and other "government-funded programs, and "malpractice" at ORMC. Complaint, *Giurca v. Orange Regional Medical Center*, Index No, EF271-2020, Doc. No. 1 (N.Y. Sup. Ct. Orange Co. Jan. 2. 2020), ¶¶ 1, 30-39, 52. He further alleges that his post-ORMC employment opportunities were adversely affected by "malicious lies and accusations" spread by one of his ORMC supervisors. *Id*. ¶ 48.

against Montefiore because they "show that Montefiore told ORMC that the Plaintiff was a security threat because he was threatening to expose how Montefiore treats psychiatric patients and threatening to call [the Department of Health]." Pl. Ltr. at 1.[2] He also argues, somewhat confusingly, that "Defendants *in this case* should have produced the communications when it [sic] was requested from them." Pl. Ltr. at 1 (emphasis added).

## Analysis

Plaintiff's Rule 60(b)(3) motion papers were unquestionably "judicial documents," as that term is used in *Amodeo* and its progeny, when filed. Defendants point to no authority (and the Court is aware of none) for the proposition that judicial documents lose that status if the motion to which they pertain is withdrawn before any ruling is issued. In analogous circumstances, federal courts treat complaints as judicial documents subject to a presumptive right of public access even after they are voluntarily withdrawn, and refuse to seal them without compelling "countervailing factors" meeting the standard set out in *Lugosch*, 435 F.3d at 120. *See, e.g., Cavender v. United States Merch. Marine Acad.*, 2020 WL 3304538, at *1 (E.D.N.Y. June 18, 2020); *Caswell v. Miller*, 2018 WL 2170294, at *3 (N.D.N.Y. May 10, 2018); *Ghadersohi v. Health Rsch., Inc.*, 2014 WL 1513916, at *2 (W.D.N.Y. Apr. 16, 2014). *See also United States v. Sattar*, 471 F. Supp. 2d 380, 386 (S.D.N.Y. 2006) (After *Lugosch*, "the test focuses not on whether the document was actually used by the court but, rather, on the role the document was intended to play in the exercise of the court's Article III duties."). In this case, moreover,

---

[2] None of the newly-produced emails, *see* Pl. Ltr. at ECF pages 3-9, were sent to or from anyone at Montefiore. However, one email, dated January 11, 2018, reports that Miguel Rodrigues of ORMC "contacted Montefiore's [unnamed] head of security" and learned that Dr. Giurca "wrote a letter threatening to expose the way the hospital treats their psych patients and working conditions." *Id*. at ECF page 3. Another ORMC email, dated January 29, 2018, states that "[a]s we understand it," Dr. Giurca was "dismissed for threatening to call DOH to complain about the quality of patient care." *Id*. at ECF page 6. In a third email, dated October 3, 2018, one of Dr. Giurca's ORMC supervisors stated that he "was told that [Dr. Giurca] has a past from his previous employment." *Id*. at DCF page 7.

4

plaintiff's initial Rule 60(b) motion, although withdrawn, is relevant to my determination of his request to file a second Rule 60(b) motion. I therefore conclude that plaintiff's papers in support of his initial motion to vacate his voluntary dismissal remain judicial documents subject to the presumption of public access.

I further conclude that defendants have not met their burden of demonstrating "countervailing factors," "competing considerations," or "higher values," *Lugosch*, 435 F.3d at 120, 124, sufficient to require the sealing of motion papers which, until now, have resided on the public docket without incident. Rather than point to any concrete or specific harm traceable to those papers, defendants argue in general terms that plaintiff's accusations, which "will remain publicly unrebutted as a consequence of the motion having been withdrawn," could have a "significant image-tarnishing impact." Def. Ltr. at 1. This is insufficient. *See*, *e.g.*, *Cavender*, 2020 WL 3304538, at *3 (plaintiff's concern that his withdrawn complaint "may potentially have negative effects on [his] future endeavors" does not "rise to the level of higher values that would allow it to seal the Complaint" or other docket entries); *Doe v. City of New York*, 2019 WL 4392533, at *2 (S.D.N.Y. Sept. 13, 2019) ("[n]either the possibility of some harm to Defendant's [ ] reputation nor to his employment prospects is a 'higher value' sufficient to overcome the strong presumption in favor of access" (quoting *Lugosch*, 435 F.3d at 125)); *Alexandria Real Estate Equities, Inc. v. Fair*, 2011 WL 6015646, at *3 (S.D.N.Y. Nov. 30, 2011) (the possibility of a future adverse impact on plaintiff's employment is not sufficient to outweigh the presumption of access); *Sony Ericsson Mobile Commc'ns AB v. Delta Elecs. Pub. Co. (Thailand)*, 2009 WL 959639, at *2 (S.D.N.Y. Apr. 8, 2009) ("Delta's primary concern appears to be that the documents contain information damaging to its reputation, a concern that, without more, does not warrant judicial protection."). Consequently, plaintiff's first vacatur motion will remain, unsealed, on the docket of this action.

It will not, however, be joined by a second vacatur motion. "Very high among the interests in our jurisprudential system is that of finality of judgments." *U.S. v. Cirami*, 563 F.2d 26, 33 (2d Cir. 1977). For this reason, among others, "Rule 60(b) motions are disfavored and reserved for exceptional cases." *Simon v. United States*, 2020 WL 832887, at *3 (S.D.N.Y. Feb. 20, 2020); *accord Crawford v. Franklin Credit Mgmt.*, 2013 WL 2951957, at *1 (S.D.N.Y. June 14, 2013) (quoting *Canale v. Manco Power Sports, LLC*, 2010 WL 2771871, at *2 (S.D.N.Y. July 13, 2010)). "Since [Rule] 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986); *see also Hoffenberg v. United States,* 2010 WL 1685558, at *4 (S.D.N.Y. Apr. 26, 2010) ("Relief under Rule 60(b) is only warranted if the [moving party] presents 'highly convincing' evidence that demonstrates 'extraordinary circumstances' justifying relief." (citations omitted)). Where, as here, the judgment sought to be vacated resulted from "an agreed-upon disposition" rather than a trial or other judicially-imposed determination, the burden on the party seeking relief is even heavier. *Nemaizer*, 793 F.2d at 63; *Walker v. Dep't of Veterans Affs.*, 1995 WL 625689, at *1 (S.D.N.Y. Oct. 25, 1995); *see also Ackermann v. United States,* 340 U.S. 193, 198 (1950) ("There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from."). A Rule 60(b) motion "is addressed to the sound discretion of the district court with appellate review limited to determining whether that discretion has been abused." *Nemaizer*, 793 F.2d at 61-62.

Here, plaintiff has already filed one vacatur motion, arguing that he should be permitted to undo the "agreed-upon disposition" of this action pursuant to Rule 60(b)(3) based on accusations that defendants engaged in garden-variety litigation misconduct which – if it occurred – could and should have been addressed, using the ordinary tools available under the Federal Rules of Civil Procedure, during the pendency of the case. He then withdrew that

6

motion, only to propose, two weeks later, that he be permitted to file another one, this time pursuant to Rule 60(b)(2), based on newly-discovered evidence recently produced by ORMC.

To succeed on a motion brought under Rule 60(b)(2), the moving party must meet an "onerous" standard which requires him to demonstrate that:

> (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

*United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (quoting *United States v. IBT,* 179 F.R.D. 444, 447 (S.D.N.Y. 1998). "These requirements must be 'strictly met.' Moreover, the newly discovered evidence must be 'highly convincing.'" *Apex Employee Wellness Services, Inc. v. APS Healthcare Bethesda, Inc.*, 2017 WL 456466 at *8-10 (S.D.N.Y. Feb. 1, 2017) (citations omitted).

Plaintiff cannot meet the Rule 60(b)(2) standard. First, he cannot have been "justifiably ignorant" of the ORMC emails, "despite due diligence." *Teamsters*, 247 F.3d at 392. As noted above, plaintiff blames Montefiore not only for the loss of his Montefiore employment, but also for the loss of his ORMC employment. Am. Compl. ¶ 75. This claim required discovery of ORMC witnesses and documents. It appears that plaintiff did obtain non-party deposition testimony from senior ORMC physicians allegedly involved in the termination of his ORMC employment, including Drs. Cesar Rojas and Ulrick Vieux, who sent or received many of the newly-discovered emails on which plaintiff now relies.[3] Having failed to obtain those emails before voluntarily dismissing this case, however, he cannot now claim to have been "justifiably" ignorant of them, and thus cannot present the "exceptional circumstances" *Nemaizer*, 793 F.2d at

---

[3] Plaintiff now claims that these witnesses perjured themselves during their depositions. Pl. Ltr. at ECF pages 13-19.

61, required to obtain relief pursuant to Rule 60(b)(2) from the dismissal that he agreed to last August.

Second, plaintiff cannot credibly claim that the ORMC emails are "of such importance that [they] probably would have changed the outcome." *Teamsters*, 247 F.3d at 392. Any statements in those emails to the effect that Montefiore retaliated against Dr. Giurca for threatening to expose unfavorable information about patient care are hearsay (or double hearsay) as to which no exception applies. *See* Fed. R. Evid. 802, 805. Even more fundamentally, plaintiff cannot claim that the OMRC emails would have "changed the outcome" of this case because he chose that outcome himself. By plaintiff's own account, he had ample evidence of Montefiore's alleged retaliation, *see*, *e.g.*, Giurca Decl. ¶¶ 9, 13, 20, 24, rendering the ORMC emails – at best – "merely cumulative or impeaching." *Teamsters*, 247 F.3d at 392. Nonetheless, he made a "free, calculated, [and] deliberate" choice, *Ackermann,* 340 U.S. at 198, to dismiss his case in its entirety rather than face defendants' Rule 37(a)(5) fee application. Ten months later, he made another "deliberate, strategic choice," *U.S. v. Bank of New York,* 14 F.3d 756, 759 (2d Cir. 1994), this time to withdraw his Rule 60(b)(3) motion rather than face defendants' Rule 11 motion.[4] On this record, only "highly convincing evidence" demonstrating "extraordinary circumstances" could justify this Court in providing plaintiff with a third bite at the apple. *Hoffenberg,* 2010 WL 1685558, at *4. No such evidence, and no such circumstances, have been presented here.

## Conclusion

Defendants' letter-motion to seal (Dkt. No. 124) is DENIED.

---

[4] The Court does not read plaintiff's letter as a request to reinstate his first vacatur motion – which would also, as a practical matter, reinstate defendants' as-yet-unfiled sanctions motion. Rather, he seeks leave to file a fresh vacatur motion, under a different subsection of the rule, relying on the evidence newly produced by ORMC in the state court case rather than on the alleged discovery misconduct committed by defendants during the pendency of the case.

8

Plaintiff's letter-motion for leave to file a second Rule 60(b) motion to vacate the voluntary dismissal of this action (Dkt. No. 125) is DENIED.

This action shall remain CLOSED.

Dated: New York, New York
July 1, 2021

**SO ORDERED.**

_____
**BARBARA MOSES**
**United States Magistrate Judge**